UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHENAE DUNCAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:14-cv-02072-RLY-DML |
| ) | |
| CITY OF INDIANAPOLIS, ) | |
| KORY DICKERSON in his individual ) | |
| capacity, and ) | |
| TRI ENTERTAINMENT ) | |
| CORPORATION doing business as ) | |
| LANDSHARKS!, INC., ) | |
| ) | |
| Defendants. ) | |

### Order on Plaintiff's Verified Petition for an Award of Attorney Fees and Expenses

#### Introduction

This case is before the court on the plaintiff's verified petition (Dkt. 50) for an award of attorney fees and expenses expended on the motion to compel. Plaintiff Shenae Duncan commenced this litigation in November 2014, seeking damages against the City of Indianapolis, Indianapolis Metropolitan Police Department ("IMPD") Officer Kory Dickerson, and Tri Entertainment Corporation, doing business as Landsharks!, Inc. ("Landsharks"), a bar in the Broad Ripple area of Indianapolis. Ms. Duncan seeks relief against Officer Dickerson in his individual capacity under 42 U.S.C. § 1983 and seeks relief against the City and the owner of the bar under state law theories.

In response to Ms. Duncan's request for production of documents, the City withheld certain documents related to the IMPD Internal Affairs ("IA") investigation conducted in response to Ms. Duncan's citizen's complaint against Officer Dickerson. Ms. Duncan subsequently filed a motion to compel discovery, which this court granted, ordering the production of fourteen witness statements gathered by an IA investigator. Thereafter, Ms. Duncan filed a verified petition for an award of attorney fees and a response to the City's opposition to that motion, ultimately requesting $33,070.10 for 59.5 hours at $550 per hour. Having reviewed the parties' submissions, the court determines that the City has not shown that its refusal to produce the witness statements was "substantially justified." *See* Fed.R.Civ.P. 37(a)(5)(A)(ii). However, the court also reduces Ms. Duncan's attorney's fee award for attorney time not reasonably expended on the matter.

Ms. Duncan's verified fee petition is therefore GRANTED in part and DENIED in part.

## Analysis

The City argues first that the court should deny Ms. Duncan's request for fees and expenses because the City's initial nondisclosure was substantially justified. Next, the City contends that even if fees are warranted, Ms. Duncan's fee request is unreasonable. The court considers each argument in turn.

**I.  Whether the City's Refusal to Produce the Witness Statements Was Substantially Justified**

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides that if a motion is granted, the court must require the party whose conduct necessitated the

2

motion to pay the movant's reasonable attorney fees and expenses. This fee shifting encourages the voluntary resolution of discovery disputes and curtails the ability of litigants to use legal processes to create obstacles for their adversaries (or third parties) without regard to the merits of their position. *See Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 787 (7th Cir. 1994). However, the court must not order this payment if the opposing party's nondisclosure was "substantially justified." *See* Fed.R.Civ.P. 37(a)(5)(A)(ii); *Rickels*, 33 F.3d at 787 ("A loser may avoid payment by establishing that his position was substantially justified.") The Supreme Court has clarified that "substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Opposition to discovery is "substantially justified" if it raises an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery request. *See* Charles Alan Wright, Arthur R. Miller, et. al., 8B *Federal Practice & Procedure* § 2288 (3d ed.).

Here, the City argues that the nondisclosure of the witness statements was substantially justified because this court has recently found that the law enforcement investigatory privilege applies to internal affairs records. In support of this argument, the City points first to *Mickle v. City of Indianapolis*, 2015 WL 5098545 (S.D. Ind. Aug. 31, 2015), which the City argues "all but confirms that reasonable people could differ regarding whether the City properly contested production of the records here." Dkt. 56 at p. 3. But *Mickle* is factually distinguishable: in that case, the only contested internal affairs document still

3

within the scope of the motion to compel was a compilation of IA investigators' handwritten notes regarding the incident that gave rise to the § 1983 excessive force case, and the defendants had already agreed to produce the witness statements, subject to a protective order. *See Mickle*, 2015 WL 5098545 at *1, *3 ("[A]t the subsequent hearing on the matter Defendants agreed to produce certain documents that had previously been withheld, provided that they are produced pursuant to a protective order. . . . Thus, the only document in question is a compilation of Internal Affairs investigators' handwritten notes regarding the incident."). The *Mickle* court weighed the ten *Frankenhauser* factors and ultimately found that the defendants in that case did not need to produce the investigator's handwritten notes, primarily because the notes were not factual in nature and the information contained therein was not of significant importance to the plaintiff's case. *See id.* at *5; *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973). In this case, by contrast, the City refused to produce the witness statements, which *were* produced subject to a protective order in *Mickle*. Moreover, the statements at issue in this case were factual rather than evaluative, and this court found that the information contained in the statements was both unavailable through other sources and important to Ms. Duncan's case. *See* Dkt. 49.

Next, the City relies on *Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003)—another case in which witness statements were not among the listed items arguably protected by the privilege, according to the *Jones* defendants. *See* 216 F.R.D. at 444-45. In citing this case as support for its position, the City

4

selectively quotes language from the *Jones* decision regarding the effect of disclosing "witness testimony" given to IPD during its investigation but doesn't acknowledge the ultimate outcome of the discovery dispute in *Jones*. *See id*. Whereas the court in the first *Jones* decision—issued while the DOJ investigation was ongoing—granted the motion for a protective order with regard to certain discovery items but denied the motion as to others, the *Jones* court revisited the discovery dispute following the completion of the DOJ's and the Marion County Prosecutor's Office's investigations into the incident. *See Jones v. City of Indianapolis*, 2004 WL 691899 at *2 (S.D. Ind. March 31, 2004) ("[T]he only reasonable conclusion is that there is no remaining criminal fallout or other official discipline planned or pending against these officers in connection with Cole's death. In light of this conclusion, the Court must necessarily revisit the appropriateness of permitting Defendants to withhold documents and information pursuant to the investigatory privilege . . . ."). Upon reconsidering the relevant *Frankenhauser* factors in light of this new development, the *Jones* court found that "[t]he elimination of possible criminal proceedings or other discipline against these officers tips the balance in favor of disclosure," and the court ultimately concluded that the defendants could no longer rely on the law enforcement investigatory privilege to shield the documents from production. *See id*. at *3, *4.

The legal authority cited by the City does not bolster its position that reasonable people could genuinely differ on whether the IA witness statements were privileged, given the facts of this case. Indeed, *Mickle* and *Jones* are strikingly

5

distinguishable from this case. This court's ruling on Ms. Duncan's motion to compel these statements was not a close call; the court found that all ten *Frankenhauser* factors supported disclosure of the witness statements. The City's nondisclosure was not substantially justified. *See* Fed.R.Civ.P. 37(a)(5)(A)(ii); *Rickels*, 33 F.3d at 787.

## II.   Whether Ms. Duncan's Fee Request Is Reasonable

Next, the City argues that even if attorney fees are warranted, Ms. Duncan's fee request is unreasonable. The appropriate starting point for determining a reasonable fee amount is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). This calculation is commonly referred to as the "lodestar." *Id*. The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Id*. The district court then has an obligation to exclude from this initial fee calculation hours that were not "reasonably expended" on the litigation. *Id*. (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). There is no precise rule or formula for making these determinations. *Hensley*, 461 U.S. at 436. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. *Id*. at 436-37. But courts need not, and indeed should not, become green-eyeshade accountants. *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2216 (2011). The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. *Id*. Moreover, the Supreme Court

6

has repeatedly emphasized that a request for attorney's fees "should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

Ms. Duncan's fee request, which includes time spent researching and replying to the City's response to Ms. Duncan's initial fee petition, is $33,070.10—59.5 hours at $550 per hour and $345.10 in expenses.[1] The City does not contest the hourly rate of Ms. Duncan's attorney, Mr. Waples, but challenges the reasonableness of time spent on various tasks. It argues that Mr. Waples did not exercise "billing judgment" in making his attorney fee request. *See* Dkt. 56 at p. 5; *see also Hensley,* 461 U.S. at 434 (explaining that a fee applicant is expected to exercise "billing judgment" in deciding which hours are "properly billed to one's *adversary* pursuant to statutory authority"). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Spegon*, 175 F.3d at 552 (*quoting Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998)).

The City contends first that it was not reasonable for Ms. Duncan's attorney to spend 16.7 hours researching, writing, and filing his motion to compel, supporting memorandum, and exhibits, because the motion and memorandum are "almost identical to" the motion and memorandum he filed in another recent case.

---

[1] In the Plaintiff's Reply Memorandum on Fee Petition, Ms. Duncan's attorney withdrew his request for 1.1 hours of attorney time scheduling Major Robinson's deposition and preparing a motion to extend time. *See* Dkt. 57 at p. 9. He also requested an additional 10.5 attorney hours spent researching and replying to the City's response to Ms. Duncan's fee petition. The court accepts this as a reasonable expenditure of time for that task, particularly because Mr. Waples had to respond to clearly distinguishable authority the City advanced in support of its "substantially justifies" argument.

Dkt. 56 at p. 6. The City maintains, "The final nine pages of Duncan's memorandum appear to quote the *Woodworth* memorandum verbatim . . . . Billing 16.7 hours of time for that task is unreasonable. Billing 16.7 hours of *attorney* time for that task is even more unreasonable." Dkt. 56 at p. 6. Ms. Duncan's attorney disputes "the notion that little additional work was necessary in this case" as the two cases sought different IA materials, and (he continues), if anything, the City is "getting a discount because of the prior work." Dkt. 57 at p. 8.

A simple comparison of the two memoranda reveals that they are *not* almost identical. While the sections discussing the law on the privilege are essentially the same, the facts of the two cases and the application and analysis of the *Frankenhauser* factors to the facts of each case—making up approximately half of the *Duncan* memorandum—are quite different. Nonetheless, given Mr. Waples' extensive experience in and knowledge of civil rights litigation—a level of expertise reflected in his hourly rate of $550 an hour—and the fact that this motion and memorandum involved a single, rather straightforward issue with which he was clearly familiar (in light of the *Woodworth* case), the court finds that this amount of time was not reasonably expended. The court deducts twenty-five percent of this time, resulting in 12.525 hours—$6,888.75—for the task of researching, writing, and filing Ms. Duncan's motion to compel, supporting memorandum, and exhibits.

Second, the City argues that it was not reasonable for Ms. Duncan's attorney to spend 6.8 hours preparing for and conducting Major Robinson's deposition, essentially "eliciting the same testimony on the same issues in this case [as in

8

*Woodworth*.]" Dkt. 56 at p. 7. Ms. Duncan's attorney argues, as he did with regard to the *Woodworth* memorandum, that although the work he performed on the previous case—the previous deposition of Major Robinson, in particular—reduced the amount of time devoted to this task on this case, the second deposition was necessary because of the factual differences between the two cases. Moreover, the court notes that the City attached the Declaration of Major Robinson to its response to the motion to compel; the City should not complain *now* that Mr. Waples was not entitled to depose its witness *then*. The court accepts that Mr. Waples reasonably expended this 6.8 hours on scheduling, preparing for, traveling to and from, conducting, and writing a summary of the deposition of Major Robinson.

The City next contends that it was not reasonable to spend 19.5 hours researching and preparing Ms. Duncan's reply brief in support of the motion to compel. The court agrees that, given Mr. Waples's level of expertise and knowledge, he reasonably could have performed this task in less time. Accordingly, the court reduces this amount by twenty-five percent for a total of 14.625 hours, or $8,043.75.

Finally, the City challenges the 4.6 hours Ms. Duncan's attorney reports for preparing the petition for attorney fees; Mr. Waples offers no response to this challenge. In *Spegon*, the Seventh Circuit wrote that "the relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon*, 175 F.3d at 554. The *Spegon* court affirmed the district court's reduction of time spent on fee-request petition to 1.6 hours, an amount of time previously held out by the

9

Seventh Circuit as an example of a "reasonable number of hours expended on fee request preparation." 175 F.3d at 554; *see also Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988) (*discussing with approval Kurowski v. Krajewski*, 848 F.2d 767 (7th Cir. 1988), in which the prevailing party submitted a bill for only 1.6 hours for the preparation of his request for an award of attorney's fees). In light of this authority, the court reduces this amount by half—to 2.3 hours. All told, the court finds that 48.15 hours were reasonably expended on the motion to compel and awards Ms. Duncan $26,482.50 plus $345.10 in expenses, for a total of $26,827.60.[2]

## Conclusion

For the reasons set forth above, the plaintiff's verified petition for an award of attorney's fees and expenses expended on the motion to compel is GRANTED in part and DENIED in part.

So ORDERED.

Dated: May 18, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

[2] In addition to the hourly figures discussed above, Mr. Waples requested 1.4 hours of attorney time for meeting with the Magistrate Judge and defense counsel, reviewing the City's response to the motion to compel, and reviewing this court's order granting the motion to compel. The City does not challenge these hours and they do not merit discussion; the court accepts and includes them in the final calculation.